IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD W. N.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-304-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in November 2016, alleging he became disabled on August 9, 2016 (Tr. 15, 178, 201). After holding an evidentiary hearing, ALJ Jason Panek denied the application on March 20, 2019 (Tr. 15-27). The Appeals Council denied review, and the decision of the ALJ became the final agency decision (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 12).

**Issues Raised by Plaintiff**

Plaintiff raises the following issues:

1. The ALJ failed to properly evaluate the effects of a moderate limitation in concentration, persistence or pace on residual functional capacity (RFC).

2. The ALJ failed to properly evaluate credibility.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes[3]. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform.

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.

*Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

In his opinion, ALJ Panek followed the five-step analytical framework described above. The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022 (Tr. 17). The ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of August 9, 2016 (Tr.

18).  The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with status post fusion, obesity, and adjustment disorder (*Id.*).  The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  The ALJ found that Plaintiff has a moderate limitation interacting with others, and a moderate limitation with regard to concentrating, persisting, or maintaining pace (Tr. 19).

The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work as defined under 20 C.F.R. 404.1567(a), with the following exceptions and/or qualifications: no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; and can attend and carry out routine and repetitive tasks and occasionally interact with the public and co-workers.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to Plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1972 (Tr. 178).  Plaintiff's alleged onset date is August 9, 2016 (*Id.*).  On his disability report dated December 19, 2016, Plaintiff indicated the following conditions limited his ability to work: lumbar stenosis, failed back syndrome, spinal stenosis, depression, high cholesterol, and diabetes (Tr. 205).

2. **Evidentiary Hearing**

An evidentiary hearing was held on November 29, 2018 (Tr. 36). Plaintiff was represented by counsel at the hearing. Plaintiff testified that in 2003, at the age of 30, he suffered a herniated bulging disc and underwent his first laminectomy (Tr. 45). Plaintiff indicated he has had seven back surgeries, including multiple laminectomies and a bilateral fusion (Tr. 46). Plaintiff most recently had back surgery in 2016, and was advised by his surgeon that further surgery is not an option (Tr. 46-47). Plaintiff testified he has been diagnosed with spinal stenosis and degenerative disc disease (Tr. 46).

Plaintiff testified he has not worked since August 9, 2016 (Tr. 43). Plaintiff described his pain as "constant" in his left sciatic area, and he indicated he suffers pain shooting down his right leg into his toe and foot (Tr. 47). Plaintiff's right foot is numb and has a "pins and needles" sensation (*Id.*). Plaintiff has a spinal stimulator that helps with pain that radiates up his back, but he needs to turn off the stimulator while driving (Tr. 43, 48, 52). Plaintiff has had a few steroid injections, but testified they were not effective and he could not continue with them for financial reasons (Tr. 53-54). Plaintiff indicated he has undergone considerable physical therapy, but had to discontinue his physical therapy treatment for financial reasons (Tr. 54).

With regard to his daily activities, Plaintiff testified he sometimes drives his kids to school, but mostly spends time at the kitchen table or laying in bed reading (Tr. 43, 49). Plaintiff can sit and read for 15 to 20 minutes before needing to get up and walk around (Tr. 49). Plaintiff can stand for 15 to 20 minutes, but needs to change positions "a lot" (Tr. 50), and he can walk for about 10 to 15 minutes (Tr. 51).

Plaintiff currently takes Vicodin twice a day for his back pain, as well as Flexeril, Celebrex, and Lyrica (Tr. 62-63).

With regard to his mental health, Plaintiff indicated he has had a "real bad go" with depression, and that it is constant (Tr. 45-46). However, Plaintiff testified it is difficult for him to talk to a professional, so he has not tried to get any professional mental health treatment (Tr. 56). Due to his depression, Plaintiff feels like he could not be in any sort of setting with people (Tr. 56). Plaintiff takes Wellbutrin (Venlafaxine) and Effexor (Bupropion) for his depression, which is prescribed by his primary care physician (Tr. 57-58).

A vocational expert ("VE") also testified (Tr. 67). The ALJ asked the VE a hypothetical question that corresponded to the ultimate RFC findings (Tr. 68). The VE testified that with the RFC limitations, there would be jobs in the national economy that an individual could perform, including hand packagers, general office clerks, and freight stock and material movers by hand (Tr. 68-69).

### 3. Relevant Medical Records

Plaintiff has a history of multiple back surgeries, the first dating back to around 2003 (Tr. 45-46). Despite his surgeries, Plaintiff has ongoing medical issues related to his back. On February 6, 2016, an MRI of Plaintiff's lumbar spine revealed severe central canal stenosis at L3-4 with disc bulging, broad based disc protrusion, facet osteoarthritis with hypertrophy, as well as hypertrophy of the ligamentum flavum; severe bilateral foraminal stenosis; and mild granulation tissue/scar within the spinal canal with slight encroachment upon the thecal sac (Tr. 1354). Plaintiff most recently underwent surgery on August 31, 2016, and the following procedures were undertaken: L4-5, L5-S1, L3-4 laminectomy and bilateral facetectomy; L3-4 complete discectomy and interbody arthrodesis utilizing interbody device and local autograft; L3-4 pedicle screw instrumentation with rods; and L4-S1 revision of posterior instrumentation (Tr. 1602). Plaintiff's

post-operative diagnosis was L3-4 junctional spondylosis and stenosis, status post L4-S1 posterior lumbar interbody fusion, which was the same as his pre-operative diagnosis (*Id.*).

Following this surgery, Plaintiff continued to report back pain. On February 23, 2017, Plaintiff's neurosurgeon, Dr. Scott Purvines, performed a follow-up examination (Tr. 375). Dr. Purvines indicated that Plaintiff's greatest complaint was muscular discomfort in his lumbar spine and a shooting discomfort in his right leg while sleeping; however, Plaintiff was "substantially better" than his preoperative status. Although Plaintiff had limiting discomfort in his back, he was allowed to continue with activity as tolerated. Plaintiff was diagnosed with lumbar stenosis with neurogenic claudication (*Id.*).

Plaintiff was examined by Dr. Wynndel Buenger at Comprehensive Pain Specialists for complaints of low back and leg pain following his August 2016 surgery (Tr. 1166, 1169, 1175, 1180). Plaintiff underwent a spinal cord stimulation trial on May 17, 2017 and was diagnosed with failed back surgical syndrome and chronic pain (Tr. 1166-67). Plaintiff reported 80% pain relief from this procedure on May 23, 2017 (Tr. 385). On August 25, 2017, Dr. Buenger implanted a spinal cord stimulator into Plaintiff's lumbar spine (Tr. 865).

Following implantation of his spinal cord stimulator, Plaintiff continued to be seen for complaints of back pain at Comprehensive Pain Specialists on October 10, 2017, December 12, 2017, February 12, 2018, March 20, 2018, and May 17, 2018, and generally reported improvement in his pain (Tr. 804, 821, 828, 837, 848). No particular abnormalities aside from some restriction on Plaintiff's range of motion and/or tenderness of the lumbar spine on palpation were identified during these examinations. During his most recent exam on May 17, 2018, Plaintiff indicated his pain interferes with his daily chores, employment, exercise, mood, and sleep, but he can exercise

and engage in social outings and hobbies due to his treatment regimen (Tr. 804). Plaintiff received steroid injections on December 21, 2017, March 28, 2018 and April 24, 2018 to address his complaints of pain (Tr. 809-811; 818-820; 834-836).

With regard to Plaintiff's mental health, medical records indicate Plaintiff was diagnosed with major depressive disorder and attention deficit hyperactivity disorder (ADHD). During an examination with his primary care physician, Dr. Jon Wagnon, on December 5, 2016, Plaintiff indicated he had stopped taking his Adderall around August 2016 when he had a back surgery and he had not noticed a difference (Tr. 459). Subsequently, during an examination on May 16, 2017, Dr. Jon Wagnon indicated Plaintiff's major depressive disorder was in full remission (Tr. 466).

Plaintiff was examined post-hearing by psychologist Stephen Ristvedt, PhD (Tr. 1809-1812). Dr. Ristvedt found that Plaintiff was fully oriented with moderately impaired attention, concentration, and recent memory, mildly impaired remote memory, and good insight and judgment. Dr. Ristvedt found that Plaintiff had an adjustment disorder, and the ALJ agreed with that conclusion. Dr. Ristvedt also found that Plaintiff's chronic pain coupled with his emotional distress significantly disrupted his cognitive abilities.

### 4. State Agency Consultants

State agency psychologists H. Tin, Psy.D., and D. Henson, PhD determined Plaintiff did not have a mental medically determinable impairment (Tr. 80, 91-92).

## Analysis

Plaintiff asserts the ALJ's finding that Plaintiff has the RFC to perform a reduced range of sedentary work and "can attend and carry out routine and repetitive tasks and occasionally interact with the public and co-workers" fails to account for the ALJ's assessment that Plaintiff has a

moderate limitation in concentration, persistence or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Plaintiff made this argument in his brief, citing *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018) and *Lanigan v. Berryhill*, 865 F.3d 558 (7th Cir. 2017).

Here, the ALJ found that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether Plaintiff's mental impairments meet or equal a listed impairment. The ALJ noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis" (Tr. 20).

The ALJ gave "some weight" to Dr. Ristvedt's opinion. He noted that Dr. Ristvedt examined Plaintiff on only one occasion, and his findings were not present on any other examinations or supported by the evidence as a whole (Tr. 24-25). The ALJ indicated that despite these issues, he incorporated Dr. Ristvedt's findings into Plaintiff's mental residual functional capacity (Tr. 25).

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a

limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).

It is the ALJ's duty to establish a logical connection between the evidence and his ultimate RFC.  *See O'Connor-Spinner*, 627 F.3d at 618.   The ALJ has not done so here where it is unclear from the ALJs questioning of the VE and his decision how he attempted to account for Plaintiff's moderate difficulties in concentration, persistence, and pace.

The Commissioner cites to various cases where the Seventh Circuit affirmed a hypothetical with a simple-task restriction to argue that no categorical rule exists for individuals with moderate difficulties in concentration, persistence or pace.   Defendant's Response at 5-6, Doc. 26 (citing to *Morrison v. Saul*, 806 F. App'x 469 (7th Cir. 2020); *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019); *Dudley v. Berryhill*, 773 F. App'x 838 (7th Cir. 2019)[4]; *Burmester v. Berryhill*, 920 F.3d 507 (7th Cir. 2019); *Pytlewski v. Saul*, 791 F. App'x 611 (7th Cir. 2019); *Urbanek v. Saul*, 796 F. App'x 910 (7th Cir. 2019)).   The Court finds these cases are factually distinguishable as the courts

---

[4] Incorrectly cited in the Defendant's brief with only the short citation of *Dudley v. Saul*, 773 F. App'x at 842.

Page **10** of **15**

generally found that the ALJ's hypothetical to the vocational expert encapsulated the medical narrative or the claimant's testimony and tailored the RFC in an individualized way.

Here, the only medical source to assess limits on Plaintiff's mental functioning was Dr. Ristvedt, but he did not opine on Plaintiff's ability to attend and carry out routine and repetitive tasks. The ALJ also failed to call an expert to testify about Plaintiff's mental impairments.

The ALJ's RFC analysis similarly fails to support the restriction for routine and repetitive tasks. The ALJ included the following explanation for his restriction:

> The claimant's undiagnosed adjustment disorder imposes moderate symptoms and limitations with his capacity to understand, remember, and carry out detailed and complex instructions only. He can concentrate, persist and maintain pace sufficiently to sustain the performance of simple, routine, and repetitive tasks.

The ALJ's RJC determination does not sufficiently allow the Court to trace the path of the ALJ's reasoning. More specifically, the ALJ does not explain how Plaintiff's difficulties with concentration, persistence, and pace are accommodated by a restriction to routine and repetitive tasks. Without further explanation, or support from a medical source, the ALJ engaged in a layperson analysis to translate Plaintiff's moderate difficulties in concentration, persistence, and pace into functional limitations in the RFC. *See Angela M. v. Saul*, Case No. 3:20-cv-50058, 2021 WL 1253451, *6 (N.D. Ill. April 5, 2021).

The ALJ's failure to build a logical bridge between Plaintiff's concentration difficulties and the RFC requires remand.

Plaintiff also asserts the ALJ's credibility analysis is legally insufficient, and that remand is required on this basis as well. More specifically, Plaintiff argues the ALJ improperly characterized his abnormalities as "acute," failed to explain what other treatment is available to an

individual who required an extension and revision of a prior surgery, and omitted discussion of Plaintiff's post-surgery treatment. Plaintiff further argues the ALJ incorrectly assessed his activities of daily living and failed to evaluate Plaintiff's stellar work history[5].

SSR 16-3p, effective as of March 28, 2016, supersedes the previous SSR on assessing the reliability of a claimant's subjective statements. 2017 WL 5180304, at *1. SSR 16-3p requires the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529; it eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." 2017 WL 5180304, at *10. It does not purport to change the standard for evaluating the claimant's allegations regarding her symptoms. Thus, prior Seventh Circuit precedents continue to apply.

The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

First, Plaintiff is correct that the ALJ misconstrued some of the medical evidence. Indeed,

---

[5] Plaintiff also argues the ALJ should have considered whether he was entitled to a closed period of disability. This issue is distinct from the consideration of Plaintiff's credibility and should have been presented as a separate issue. The Court notes, however, that there is no reason to think the ALJ failed to consider this issue. The ALJ referred to the 12-month durational requirement and stated that Plaintiff "has not been under a disability with the meaning of the Social Security Act" since the alleged onset date (Tr. 16).

the ALJ characterized Plaintiff's abnormalities as "acute," but such a finding is not apparent from the medical evidence. Indeed, it is not clear what medical evidence the ALJ was relying on to support this finding. The Court notes that following his 2016 back surgery, Plaintiff's pre-operative and post-operative diagnoses were the same. Plaintiff also required placement of a spinal stimulator following his 2016 back surgery and, while he indicated on some occasions his pain was better after receiving the stimulator, he still had complaints of pain that limited his activities of daily living.

Plaintiff also testified that following his 2016 surgery the surgeon indicated he could not have any more surgeries. The ALJ failed to address this issue in his decision.

The ALJ's reference to Plaintiff's daily activities is also not supported by the evidence in the record. Specifically, the ALJ indicated that Plaintiff is able to provide care for his own personal needs and help care for his minor children, cook, perform light household chores, read, hunt, handle money, shop, and drive. Although an ALJ should consider activities, this must be "done with care." *Roddy v. Astrue*, 705 F.3d 631, 640 (7th Cir. 2013). In *Roddy*, the Seventh Circuit remarked that it has repeatedly cautioned that a person's ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time. *Id.* (citations omitted). Here, the ALJ indicated Plaintiff was able to hunt, shop, and drive. The ALJ did not discuss Plaintiff's qualifications made at the hearing regarding these activities. Specifically, Plaintiff testified he tries not to drive very much, and only drives "short trips." When he shops for groceries, Plaintiff explained he only goes when he needs to get one or two things and takes breaks when he needs to. Plaintiff also testified he no longer hunts and when he reads he needs to take breaks and change positions every 15 to 20 minutes.

Plaintiff also clarified he is most comfortable reading while lying down. The ALJ failed to consider Plaintiff's testimony regarding his daily activities, and, as such, his assessment of Plaintiff's credibility was improperly analyzed and unsupported by substantial evidence. The erroneous credibility determination requires remand. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

Plaintiff also briefly indicates the ALJ failed to evaluate the effect of Plaintiff's stellar work history. While the Court notes that an ALJ is not statutorily required to consider a claimant's work history, a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (internal quotations omitted). In this instance, it appears the ALJ should have at least acknowledged Plaintiff's work history in assessing credibility.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and consideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: September 21, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**